IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 21-cr-368-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**DEMA MARTINEZ,**

    Defendant.

---

**ORDER DENYING JOINT MOTION FOR SENTENCE REDUCTION**

---

Before the Court is Defendant Dema Martinez[1] and the Government's Joint Motion for Reduced Sentence Under 18 U.S.C. § 3852(c) and USSG Amendment 821, Part B ("Motion"). (ECF No. 63.) For the following reasons, the Court denies the Motion.

**I. BACKGROUND**

In October 2022, Martinez pleaded guilty to aiding and abetting wire fraud and fraudulent use of an unauthorized access device. (ECF No. 40 at 1,3; ECF No. 49 at 1.) The advisory guideline sentencing range for these offenses was 33–41 months' imprisonment. (ECF No. 50 at 1.) This sentencing range corresponded to an offense level of 20 and a criminal history category of I. (*Id.*) The criminal history score was based on Martinez being assessed zero criminal history points. (*Id.*) Martinez sought a sentence of five years' probation (ECF No. 33 at 11); the Government sought a

---

[1] Dema Martinez has no relation to the undersigned.

sentence of 33 months' imprisonment (ECF No. 43 at 2); and the United States Probation Office recommended a sentence of 37 months' imprisonment (ECF No. 40-1 at 2).

Nevertheless, in January 2024, the Court imposed an upward variant sentence of 50 months' imprisonment on each count, to run concurrently. (ECF No. 49 at 2.) In doing so, the Court stressed that the "most aggravated factor, in this case, is the seriousness of her crimes." (ECF No. 60 at 45.)

## II. ANALYSIS

The parties urge the Court to reduce Martinez's sentence based on the "Zero-Point Offender" section of Amendment 821, which provides that a defendant is eligible for a decrease of two offense levels if they were not assigned any criminal history points at the time of sentencing. U.S.S.G. § 4C1.1. According to the parties, Section 4C1.1 and Amendment 821 "establish a lowered total offense level of 18, which together yield a revised guideline range of 27 to 33 months." (ECF No. 63 at 2.) The parties continue:

> In light of the Court's prior finding that an upward variance from the applicable guideline range was warranted, a sentence that is directly comparable to that nine-month (approximately 22%) upward variance from the top of the original guideline range of 41 months would be a seven-month upward variance (approximately 22%) from the top of the revised guideline range of 33 months. This comparable upward variance would result in a total sentence of 40 months, which represents a 10-month reduction from the sentence originally imposed.

(Id. at 3.) Hence, "the parties jointly request a sentence reduction to 40 months, representing concurrent 40-month sentences on Counts 1 and 24, with all other aspects of the original sentence remaining unchanged." (Id. (emphasis omitted).) They also note that "[t]he United States Probation Office agrees with this recommendation." (Id.)

2

After a judgment of conviction is entered, federal courts have limited authority to modify a sentence. *Dillon v. United States*, 560 U.S. 817, 824 (2010); 18 U.S.C. § 3582(c). That said, Section 3582(c) allows for a possible sentence reduction for a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c); *see also United States v. Price*, 44 F.4th 1288, 1294 (10th Cir. 2022) (noting that "retroactive Guideline amendments" are a valid statutory reason to modify a sentence).

When considering a retroactive amendment to the sentencing guidelines, the Court engages in a two-step inquiry. *United States v. Hald*, 8 F.4th 932, 944 (10th Cir. 2021). First, the Court must determine the defendant's eligibility for a sentence reduction—that is, whether the applicable guideline range has been lowered. Second, the Court considers whether the reduction is warranted based on the Section 3553(a) factors. *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013). A court may only reduce a sentence if doing so would be "consistent with applicable policy statements" of the Sentencing Commission. 18 U.S.C. § 3582(c)(2).

Effective November 1, 2023, Amendment 821 created a new guideline, § 4C1.1, which provides for a decrease of two offense levels for "Zero-Point Offenders." As relevant here, U.S.S.G. § 4B1.1 provides that a defendant is eligible for a decrease of two offense levels if they are a "Zero-Point Offender," *i.e.*, a defendant with zero criminal history points.

At the outset, the Court notes that it appreciates the parties' collaboration in identifying that Martinez is indeed a Zero-Point Offender under Amendment 821 and

3

therefore eligible for a sentence reduction. § 3582(c). As the parties helpfully calculate, the retroactive application of Amendment 821 undisputedly lowers Martinez's applicable guideline range from 33–41 months to 27–33 months. (ECF No. 63 at 2.)

Notwithstanding the parties' consensus, the Court concludes that a sentence reduction is not appropriate in this case. In the Court's view, reducing Martinez's sentence would not be justified in light of the Section 3553(a) factors. § 3582(c)(2); *Battle*, 706 F.3d at 1317. Those factors include: (1) defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3553(a).

As mentioned, the Court imposed an upward variant sentence based on the severity and seriousness of the crimes to which Martinez pleaded guilty. The Court detailed its concerns regarding the aggravating circumstances present in this case as follows:

> The defendant's complex web of fraud and deceit spanned over seven years; involved the loss to four separate victims; resulted in losses to the victims totaling over $826,000. It involved a myriad of intricate and premeditated steps undertaken by her, in a far-ranging, persistent and years-long scheme to conceal her fraudulent activity; and it involved a grave breach of trust which the defendant—with the defendant's employer and her coworkers.
>
> I agree with the government, that the defendant exhibits all of the hallmarks of a seasoned grifter, and I too agree with Mr. Neff that these are strong words, but they are

appropriate for this offender—this defendant. Her extraordinary crimes in this case reflect, I believe, a high level of dishonesty, untrustworthiness and deceit.

In addition to stealing over $811,000 from the Bureau of Indian Affairs, she also managed to convince two banks that she was deserving of loans due to a federal government shutdown. When the loans came due, she unsuccessfully attempted to discharge her bank debt in bankruptcy court.

During the COVID pandemic she even helped herself to a government vehicle, a Chevrolet Tahoe, which she used for a vacation and personal errands. She also made multiple illicit purchases of gasoline and car washes for her personal vehicle, using the government fleet credit card.

To disguise her conduct and conceal her fraudulent act activity, the defendant created various fictitious vendors, using online payment services companies PayPal and Square. She concealed her involvement and control over these various fictitious vendors by utilizing the identity of person number one, or others. When creating the fictitious vendors and connected email accounts, she directed unauthorized payments from government credit cards into PayPal and into those Square accounts. She later transferred funds from those unauthorized payments into bank accounts held by person number one or into a bank account which she, herself, held jointly with person number one.

Over the course of the scheme, the defendant utilized funds she stole from a small and underfunded government agency to purchase goods and services which included, but by no means were limited to, airline tickets, Apple watches, appliances, an Audi® S4 automobile, Beats By Dre headphones, bicycles, cameras, where I have learned today, over 50 iPhones, and iPhone accessories, health supplement, home furnishings, a home laser therapy system, jewelry, King Soopers food purchases, health supplements, luggage, mattresses, pet food, $20,000, I have learned now, in residential landscaping, Samsung™ Galaxy phones, Sony PlayStation® controllers, Starbucks purchases, Uber rides, veterinarian services, Walmart® purchases, wrestling singlets and gear to accommodate a college full of athletes in a wrestling program, as I learned today, and as I also learned today, 23 pairs of Air Jordan

> basketball shoes, and she used these funds to pay her Xcel Energy® bills.
>
> To my mind, the defendant was a prolific and resourceful thief, utilizing various methods and novel means by which to defraud the government and private banks. It must recognize that the federal government places a substantial amount of trust and authority in its employees, in order for the government agencies, such as the BIA, to function smoothly and efficiently, it depends on its employees to follow protocol, and at a minimum, act in an honest and lawful manner. Here, the defendant repeatedly lied to her coworkers and submitted fraudulent documentation to her employer to cover her tracks, for these and other reasons, I find the need for a sentence to promote respect for the law and provide deterrence is very substantial, in this case.

(ECF No. 60 at 45–48.)

These concerns have not changed in the two years since the Court sentenced Martinez. As detailed at length above, the scope, nature, and egregiousness of her offenses remain of great concern to the Court. Also troubling to the Court are two matters which arose after Martinez committed her crimes.

First, subsequent to her sentencing, the Court granted Martinez two extensions of the deadline of her *privilege* to self-surrender to the Bureau of Prisons ("BOP"), the final deadline being June 26, 2023. (ECF No. 53). However, Defendant chose to abscond, and she failed to report to the BOP by that date. Given her fugitive status, the Court was required to issue a warrant for her arrest on July 5, 2023. (ECF No. 58.) The warrant was not executed, however, given that Martinez did eventually self-surrender to the BOP, sometime between July 6 and July 10, 2023. (ECF No. 61.) Thus, she was a fugitive from the criminal justice system for between ten and fourteen days.

Second is the matter of Martinez's allocution to and colloquy with the Court at her sentencing hearing. From the Court's perspective, during this exchange, Martinez failed

to accept or acknowledge the gravity of her crimes, or the enormity of the adverse consequences her fraud and deceit had on the relatively miniscule budget available to her Bureau of Indian Affairs employer, which is among the very smallest of federal agencies.  Compounding all this is the fact, in the undersigned's judgment, and based on his personal observation and assessment of Martinez's allocution, that to the extent said allocution contained any statements of remorse or contrition for her criminal conduct, they were not authentic or credible in any meaningful way.  Rather, such statements appeared to the Court to be nothing more than rote incantations of insincere and formulaic expressions of regret.

The Court finds that granting Martinez the relief she seeks in the Motion would result in a sentence that does not reflect the seriousness of her crimes and, perhaps of even greater importance, it would serve only to undermine the twin sentencing goals of specific and general deterrence, the latter of which has been repeatedly recognized as being of critical importance in the context of financial fraud crimes.[2]  *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014) ("[W]e have explained that general deterrence is an important factor in white-collar cases, where the motivation is greed."); *United States v. Martin,* 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'") (alteration in original) (citation omitted).

For all these reasons, the Motion is DENIED.  (ECF No. 63.)

---

[2] The Court appreciates the parties' effort to incorporate its original upward variance in their request for a sentence reduction.  But lest there be any doubt, the Court's 50-month sentence was primarily based on the seriousness of the crimes at issue in this case.  It was not imposed by adding a certain percentage (such as 22%) of the original guideline range.

Dated this 2nd day of June, 2025.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge